IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TDC NATIONAL ASSURANCE
COMPANY,

    Plaintiff,

       v.

MARSH USA, LLC, f/k/a Marsh USA
Inc., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:26-CV-400-TWT

## OPINION AND ORDER

This is an action to enforce an arbitral subpoena. Petitioner TDC National Assurance Company ("TDC") entered into a reinsurance contract with Acadia Assurance Company ("Acadia") under which TDC agreed to reinsure the $15 million excess $60 million layer of an excess insurance policy ("Excess Policy") that Acadia issued to its parent, Acadia Healthcare, Inc. ("AHC"). Negotiations for TDC's reinsurance were conducted through Andrew Pickle of Marsh USA LLC, acting on behalf of Acadia in serving as Acadia's reinsurance broker. Those negotiations took place principally during August 2017 between TDC's underwriter (Steven Lubinsky) and Pickle. Thereafter, Acadia billed TDC $15 million for its alleged share of losses sustained by AHC. TDC contested the billing on multiple grounds, one of which was that TDC's reinsurance only applied to acts or medical incidents that occurred on or after September 1, 2017, the inception date of the reinsured Excess Policy. The losses in question arose from acts which pre-dated the inception date of the

Excess Policy. In accordance with the arbitration provision in the reinsurance contract, TDC initiated arbitration against Acadia on or about January 11, 2024. Although the arbitration provision provided for arbitration in Hartford, Connecticut, the parties agreed to hold the hearing in New York City.

The arbitration hearing commenced in New York City on June 16, 2025. Acadia did not call any witness with knowledge of the reinsurance that Acadia intended to purchase from TDC. TDC's underwriter testified that because he was being asked to provide reinsurance of new, increased limits which were not previously available to AHC, he was unwilling to provide reinsurance for prior acts—i.e., no retroactive coverage. He wrote to Pickle, seeking confirmation that TDC's reinsurance could be provided on an "RDI"—i.e., retro date inception—basis (whereby the retroactive date would be the inception date of the Excess Policy). Pickle confirmed in writing that TDC's reinsurance could be provided on that basis. TDC bound its reinsurance coverage on that basis on August 31, 2017. The first phase of the hearing ended on June 19, 2025. Following the hearing on June 19, 2025, the Umpire of the tripartite panel issued a ruling that "TDC may subpoena Andrew Pickle for testimony in Atlanta on 9/27/25." After Mr. Pickle was served with a subpoena (the "Pickle Subpoena"), counsel for Marsh informed TDC's counsel that Mr. Pickle would not appear and raised jurisdictional objections to the subpoena.

This Court has personal jurisdiction over Pickle because Pickle resides in this judicial district and is employed by Marsh, which maintains an office for the transaction of business in this judicial district. *Goodyear Dunlop Tires Ops., S.A. v. Brown,* 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ."). Through counsel, Marsh disputed the authority of a New York federal district court to compel its testimony in New York. Now, Marsh disputes the authority of this Court to compel Pickle's testimony in Georgia. Under Marsh's argument, no court has authority to compel Pickle to testify because the arbitration was sited in New York and Pickle resides in Georgia. But because the arbitrators have agreed to temporarily re-site the hearing to Georgia for purposes of hearing Pickle's testimony, the subpoena it issued is valid, and this Court has authority to enforce it.

Through counsel, Pickle contends that the summons is unenforceable "because only the Southern District of New York (the federal court where the arbitration is seated) has jurisdiction to enforce a subpoena in connection with the New York-seated arbitration." Pickle maintains that, under Section 7, arbitrators can only "sit" in the location at which the arbitration is being administered or in the location specified in the contract's arbitration provision. The cases relied upon by Pickle were incorrectly decided, effectively render arbitration panels incapable of obtaining evidence from nonparties who reside

3

outside of the 100-mile territorial limitation prescribed in Rule 45, result in a Catch-22 scenario by requiring enforcement proceedings to be filed in a district which lacks personal jurisdiction over the subpoenaed witness, and fail to align Section 7 with Rule 45's nationwide service. *See Managed Care Adv. Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1160 (11th Cir. 2019). Any reading that limits the location of a Section 7 subpoena to a single location or to the site of arbitration should be rejected as violating the well-known rule that courts should be "reluctant to treat statutory terms as surplusage." *Watson v. Kingdom of Saudi Arabia,* 159 F.4th 1234, 1254 (11th Cir. 2025) (citation modified). The statute provides for venue in the "district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators." 9 U.S.C. § 7. The Petition to Enforce Arbitral Subpoena [Doc. 1] is therefore GRANTED.

SO ORDERED, this ____30th____ day of June, 2026.

THOMAS W. THRASH, JR.
United States District Judge

4